STATE EX REL. BOARD OF REGENTS OF NORMAL SCHOOLS vs. EKERN, Commissioner of Insurance.

*December 8, 1914—January 12, 1915.*

*State insurance of state property: Certificate by insurance commissioner essential.*

Under secs. 1978a to 1978c, Stats. 1913, providing for state insurance of public property and establishing a state insurance fund, such property does not automatically become insured, but payments out of said fund are limited to losses of property which had been certified by the insurance commissioner to the state treasurer as insured, and to the amount of insurance thereon certified by said commissioner.

MANDAMUS to *Herman L. Ekern* as insurance commissioner of the state.

The relator applied for an original writ of *mandamus* to command the defendant, as insurance commissioner of this state, to file a statement with the secretary of state and state treasurer giving the total loss sustained through the destruction by fire of the normal school buildings in the city of Superior, to enable the secretary of state to issue his warrant for the amount of such loss to the state treasurer for the transfer of this amount from the "state insurance fund" to the funds under the control of the relator, as normal school regents, to enable them to restore the buildings and other property so destroyed by fire.

The petition shows that the real and personal property con-
stituting the state normal school at Superior consisted of a
large main building and two wings connected therewith, and
the contents thereof.    The main part of the building was con-
structed in 1896.    One wing was constructed in 1908, and
the other was completed in 1913 and accepted on February 5,
1913.    On March 27, 1914, the main building and additions
thereto with contents were completely destroyed by fire.    The
total loss occasioned by such fire is alleged to amount to
$201,300.    The petition also alleged that the defendant neg-
lected and refused to ascertain and fix the total amount of
such loss by fire and to file a statement thereof with the sec-
retary of state and the state treasurer and certify the total
loss to the secretary of state to authorize him to issue his war-
rant therefor to the state treasurer to authorize him to trans-
fer such amount from the "state insurance fund" and credit
the same to the fund of the normal school regents, who had
charge and control of these properties and are authorized to
rebuild or restore the property so destroyed.    It is further al-
leged that the defendant, after February 5, 1913, the date of
the completion and acceptance by the relator of the wing last
constructed as an addition of the school building, omitted to
certify, as required of him, the amount of insurance upon
such property to be carried by the state and omitted to order
the state treasurer to credit the "state insurance fund" with
sixty per cent. of the premium for such insurance, fixed by
him as insurance commissioner.    Petitioner alleges that the
defendant, through experts appointed by him, has been fully
informed that the loss occasioned by fire to the school build-
ing amounts to $148,300 and the loss to the contents of the
building amounted to $53,000, but that notwithstanding
these facts he did, on April 23, 1914, certify to the secretary
of state that he had fixed the amount of such loss which is to
be paid out of the "state insurance fund" at the sum of
$94,500, and directed that such amount be transferred from

the insurance fund to the fund of the board of regents of the state normal schools.

The defendant in his return alleges that he, on July 1, 1912, had ascertained the value of the buildings and contents of the state normal school at Superior to be as follows: building $90,000, and the contents thereof $15,000, and that he certified the amount of insurance thereon from July 1, 1912, to June 30, 1913, at $81,000 on the building and $13,500 on the contents; that the premium charge thereon amounted to $260.55, and that such certification was properly filed and the respective accounts properly debited and credited by the state treasurer; that he withheld certification of insurance of the normal school properties after July 1, 1913, for information from the board of normal school regents, and that he received a corrected schedule of the normal school properties on or about January 17, 1914, and that according to such schedule no change of conditions or value of the property of the Superior normal school was reported to him, and that he, on February 15, 1914, pursuant to such report, duly certified the insurance of this property from July 1, 1913, to June 30, 1914, at the same value at which it had been fixed the preceding year, and for the same amount of insurance and the same amount of premium, and that he ordered the premium transferred to the "state insurance fund;" that he received no report or information of any change in the construction of the building or other information concerning any changes in value of this property before he certified this insurance, which expired June 30, 1914. The defendant alleges that he caused an investigation to be made of the loss sustained by the destruction of the building and contents and found that it exceeded the amount of the existing insurance at the time of the loss and therefore fixed the loss at the full amount of the insurance and allowed damages at this sum, $94,500, and that he has duly certified the same to the secretary of state and the state treasurer.

The petitioner demurred to the return upon the ground that it did not state facts sufficient to constitute a defense.

*A. C. Umbreit,* special counsel for the state and attorney for the relator.

For the defendant there was a brief by the *Attorney General* and *Walter Drew,* deputy attorney general, and oral argument by *Mr. Drew.*

SIEBECKER, J.    The law providing for insurance by the state of state property and creating a "state insurance fund" for the payment of losses by fire and tornado was enacted as ch. 68, Laws of 1903, and is entitled "An act to provide for state insurance on public buildings, and making an appropriation therefor." The provisions thereof with the amendments thereto appear as secs. 1978a, 1978b, and 1978c, Stats. 1913. This law annulled the power of all officers and agents of the state to contract for insurance of any public buildings or property of the state against loss by fire or tornado and inhibited paying out any public moneys therefor or incurring any indebtedness on account thereof against the state, except as provided in the act.

The relator asserts that the law contemplates that all state property is thereby insured for an amount equal to ninety per cent. of the cash value, regardless of the insurance commissioner's omission to determine the insurable value of each. item of state property annually on July 1st and to certify the amount of insurance thereon to be carried by the state to the state treasurer and order him to credit the "state insurance fund" with the amount of the premium fixed by the commissioner in the manner prescribed in the law and debit such amount to the proper account of the public authority having the property in charge. This claim of the relator involves the inquiry of the legislative intent in providing this scheme for insuring state property in the way prescribed in these statutes. The statutes positively prohibit insurance of state

properties by private insurance agencies. They provide a scheme for carrying insurance on property owned by the state and prescribe the method of fixing the cash value for the purpose of such insurance and for making an annual charge against the specific fund of the public authorities having the building and property under their control and management. The plan adopted of insuring such property is, in its ways and methods, like those employed by insurance agencies and adopts the average rate of such agencies as a proper rate. Each department of state having the property in charge is to pay into the fund the cost of insurance. The language of the act declaring that: "Upon July 1st, annually, the commissioner of insurance of the state shall provide for the insurance by the state of all state property for an amount equal to ninety per cent. of the cash value of such property," evinces an intent that the state is to insure the property of the state and commands the commissioner to execute the undertaking and thereby effect the insurance of state property. The provisions of the act also limit the amount for which the property is to be insured to ninety per cent. of its cash value and provide how the insurable value shall be determined. The provisions directing that, if the amount of insurance in force on such property is less than ninety per cent. of its value, the commissioner shall provide additional insurance up to such value in the manner specified in the statutes, and that "He shall certify to the state treasurer the amount of insurance upon such property to be carried by the state, . . ." are certain in their meaning and plainly express a legislative purpose of effecting insurance of state property at the rate to be ascertained by the commissioner as directed and of creating a "state insurance fund" for payment of the losses of such property by fire or tornado. The various provisions of the statutes, when considered as a whole, are unambiguous in their meaning and must be accepted and carried into effect as expressive of the legislative purpose. The practical effect of all

the parts of the act, when applied to the external facts of the subject involved, is the creation of a system of state insurance of state property and the establishment of a "state insurance fund" out of which fire and tornado losses are to be paid for reconstruction of buildings and restoration of other property lost. It is also manifest that participation in the benefit of this insurance fund by any department of the state in charge, control, and management of the lost properties is conditional upon certification by the insurance commissioner to the state treasurer of the insurance effected by him in the manner specified in the statutes. The provisions of sec. 1978c providing for adjustment of the loss of property certified as insured and payment of the loss out of the "state insurance fund," when read in connection with the other parts of the statute, show that it was intended that payment out of this fund should be limited to losses of property which had been certified as insured to the state treasurer by the insurance commissioner. The claim of the relator that the whole property of the Superior normal school was automatically insured under the law, though not certified to the state treasurer by the insurance commissioner, is clearly negatived and wholly out of harmony with the evident purpose and intent of the legislature. The action of the legislature in adding to the original act a grant of authority to counties, towns, cities, villages, and school districts to insure their properties against loss with the state and secure payment for losses out of the "state insurance fund" upon property certified by the commissioner, and payment of the rate of insurance fixed by him in the manner state property is insured, shows clearly that the legislature interpreted the law as providing for insurance of property to the amount specified by the statute in analogy to the usual and well known practices under which private insurance is effected.

The commissioner of insurance was correct in determining that the amount due the relator was limited to the amount

which he had certified to the state treasurer as insurance upon the Superior normal school buildings and their contents.

The facts before the court upon the petition and return show that the relator is not entitled to relief. The demurrer to the return must be overruled and judgment ordered quashing the writ, without costs.

*By the Court.*—It is so ordered.

BARNES, J., dissents.